

# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
## ALEXANDRIA DIVISION

| | |
|---|---|
| **ROCK HILL HONEY BEE FARMS** * | |
| **A sole proprietorship, operated by** * | |
| **GENNARO MATTIACCIO II** * | |
| **Plaintiffs** * | |
| **Vs.** * | |
| * | Cause of Action No: 1:21 CV421 |
| * | |
| * | |
| **CANTU APAIRIES OF FLORIDA, LLC** * | |
| **And** * | |
| * | |
| **JOSEPH CANTU,** * | |
| * | |
| **And** * | |
| **Agriland Holding Inc, of Chowchilla, Ca,** * | |
| **And** * | |
| **John Does, 1-6** * | |
| **Defendants** * | |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Rock Hill Honey Bee Farms, a sole proprietorship ("Rock Hill) and Gennaro Mattiaccio ("Mattiaccio"), pursuant to Fed. R. Civ. P. 3 and 8(a), for its Complaint against Defendant Joseph Cantu ("Cantu"), Cantu Apiaries ("Cantu Apiaries) and Agriland Holdings, Inc. ("Agriland").

## INTRODUCTION

This action arises out of an Agreement, ("The Agreement") between the parties dated November 10, 2020, attached hereto as Exhibit A, whereby Rock Hill was to supply 432 colonies of domesticated Honey Bees to support a contract in California to pollinate California Almonds. Upon completion, and without authority, Defendant Cantu Apiaries failed to return plaintiff's honeybee colonies to him in Virginia despite plaintiff having hired a trucking company to do so. Instead, defendants sent plaintiff's bees to an unknown individual in Florida as that person claimed

1

the bees in Cantu's possession were stolen. As of this filing, plaintiff does not know where these bees are located.   Further, upon completion of the contract, Defendant Cantu failed to pay for services rendered. As yet unidentified additional beekeepers are involved in this matter.

## THE PARTIES

1.      Plaintiff is a resident and citizen of the Commonwealth of Virginia residing at 45 Pinto Lane, Stafford, Virginia 22556. Process may be served upon him at this address.  Plaintiff is a Commercial Beekeeper transacting business throughout the United States, with their home base of Stafford County, Virginia.

2.      Defendant Cantu and Cantu Apiaries are residents of the State of Florida and regularly transacts business throughout the United States.  He is a Commercial Beekeeper who pollinates the Almonds. On information and belief, he resides at 4584 County Road 386N, Wewahitchka, Florida 32465 where process may be served.

3.      Defendant Agriland Holding Inc, is a California Corporation, located at 23400 Road 24, Chowchilla, California 93610.

4.      Defendant is without sufficient information to identify the six additional "John Doe" defendants, but thus makes these initial filings.  It is expected that once the full identities of these individuals are known, they will be added to the Complaint and Demand for Jury Trial.

## JURISDICTION AND VENUE

5.  This Court has subject matter jurisdiction over this action under 28 USC § 1332, because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

6.  This Court has personal jurisdiction over the Plaintiff because Rock Hill and Mattiaccio are citizens of Virginia.

7.  Venue is proper in this District, pursuant to 28 U.S.C. § 1391, because the defendants routinely transact business in Virginia and is subject to personal jurisdiction in this State. In addition, courts in Virginia have a substantial interest in providing a forum for the enforcement of contracts entered into in Virginia.

8. Venue is proper in the Alexandria Division, as the conduct giving rise to this dispute occurred within the corporate limits of Stafford, Virginia.

## STATEMENT OF FACTS AND CLAIMS

9. Each year, beekeepers across the United States send over 2.5 million colonies of honeybees to California to pollinate the Almonds. It is oftentimes the most profitable venture for the American Commercial Beekeeper.

10. On numerous occasions in 2020, defendant contacted Plaintiff telephonically while plaintiff was in Virginia inquiring as to whether or not he had colonies for rent for the purposes of the Almond Pollination. Defendant Cantu maintained close contact with the plaintiff to ensure plaintiffs bees would be transported to California for the pollination season in early 2021. Defendant made numerous phone calls to the plaintiff in Virginia to ensure that plaintiff would enter into a contract with him to provide the necessary colonies. Defendant subsequently dispatched a contract to the plaintiff at his residential address in Virginia.

11. At the time, Plaintiff had 432 colonies in various locations in Virginia, Florida, and South Carolina available for rent.

12. Plaintiff and Defendant entered into a written contract to provide the bees for the 2021 Almond Pollination. This contract is attached to this Complaint as Exhibit A.

13. Upon contract inception, more specifically, on January 26, 2021, the plaintiff delivered 432 colonies of honeybees to the defendant at his Agriland's ranch located in Chowchilla, California.

14. Defendant Cantu and Agriland both represented to plaintiff that his bees would be secure at the home location, plaintiff having made contact with Agriland telephonically prior to shipping the bees to his location.

15. On or about Sunday, February 14, 2021, Defendant Cantu contacted plaintiff alleging that another beekeeper believed the stock plaintiff sent him belong to them and was stolen. Plaintiff gave specific instructions that only law enforcement was to check the colonies located in Chowchilla.

16. On February 14, 2021, plaintiff specifically authorized only law enforcement to check the bees.

17. On February 27, 2021, having heard nothing from Cantu, plaintiff contacted him by text to ask about the status of the inspection. Cantu stated in a text that, "We are grading now we do yours this afternoon. I'll give you an update when we are done, ok". No update was ever provided. Defendant said nothing about being unhappy with the bees, that the bees did not pass inspection, or were subpar, or that there were any other problems.

18. On March 5, 2021, still not having heard anything from Cantu about the status of the bees, plaintiff contacted him about the rumors that bees were leaving California enroute to their home destination. Cantu replied by text, "Yes Sir, it will be next week up north, then we move south". Plaintiff advised Cantu that he had a truck available but needed a date certain to provide to the trucking company.

19. On March 11, 2021, plaintiff again contacted Defendant Cantu and also inquired with Agriland Chowchilla about the status of the bees and payment. Agriland was surprised that payment had not been provided yet because they had paid Cantu "several weeks prior". On March 11, 2021, Cantu replied that, "Yes Sir, they are late paying but we should have it today from the grower".

20. Again, on March 17, 2021, plaintiff contacted Cantu and asked about the status of release of the bees and payment. Cantu replied via text, "Yes Sir, we are staging now got a few loads out an (sic) will let you know and the money, I'll call my mom and see what's up with a check".

21. Again, on March 20, 2021, plaintiff inquired of the defendant if we could load the truck on Tuesday, March 23, 2021 and have it shipped to an initial holding yard where the bees would be evaluated, then transported to Virginia for contracts plaintiff had requiring pollination by honey bees. Cantu replied, "Yes Sr (sic)"

22. On March 24, 2021, plaintiff and employees left Virginia for Florida to prepare for the arrival of the bees.

23. On March 25, 2021, while plaintiff was in Florida awaiting the arrival of the bees, plaintiff inquired of Cantu if the bees had been loaded with no response.

## THE BEES ARE IMPROPERLY SEIZED BY UNKNOWN INDIVIDUALS

24. On March 25, 2021 at about mid-day, while plaintiff was in Florida, Cantu dispatched an email stating that, "the check had been mailed", and that "to get information about your bees, you need to get hold of, Sergeant Luke Keppell. (See Exhibit B)

25. Plaintiff contacted SGT Keppell, who stated that my bees had been removed from California, by an as yet unidentified beekeeper, without a warrant, court order, or other legal device. Keppel refused to provide the location or identity of the beekeepers who now had possession of the bees. But Keppel insisted the bees were stolen because, "they had their markings". Ironically, the bees also contained plaintiff's identifying markings.

26. On March 30, 2021, plaintiff receive a check in the mail for the aggregate amount of $6, 360.00 claiming that 360 hives, 180 below grade at $100.00, and that a disbursement came out for the amount of $8,040 to an unknown entity in clear violation of the written contract . (See Exhibit C)

27. Plaintiff did not authorize the payment of fees to anyone other than Cantu for the "off load and on load" fees as specified in the contract.

28. Plaintiff did not authorize the release of his colonies to anyone and Cantu shipped them to another as yet unidentified beekeeper without authority.

29. Plaintiff has made numerous attempts to obtain payment for the services rendered to no avail.

30. Plaintiff has made numerous attempts to learn the whereabouts of the bees and equipment valued in excess of $350,000.00 to no avail.

31. Contractually, plaintiff should have been paid, $79, 920.00 for the pollination contract which was not paid.

32. Defendant Cantu is in breach of the contract dated November 10, 2020.

33. Unfortunately, plaintiff did not conduct proper due diligence prior to entering into a contract with Cantu or his business. A detailed investigation conducted privately revealed that Joseph Cantu is a convicted violent offender with multiple convictions for grand theft, fraud, assault and battery, and other matters. (See Exhibit D)

34. In a final attempt to resolve this matter, plaintiff dispatched an email and a message through Facebook on March 30, 2021, asking Cantu to contact him. Cantu did not.

35. Defendant Agriland Holding Co, had a duty to plaintiff to ensure that his equipment and bees were not removed improperly, and failed to adequately supervise the contract with Cantu; failed to conduct adequate due diligence prior to engaging Cantu and Cantu Apiaries, and knowingly allowed the conduct of Cantu to go unchecked.

36. Cantu, Cantu Apiaries, and Agriland consorted with unknown individuals, known only to them and identified here as John Does 1-6 to deprive plaintiff of the rightful ownership of his property.

37. At all times relevant hereto, Cantu was an employee of Cantu Apiaries and conducted the unlawful transfer, and misappropriation of nearly 432 colonies of honeybees without legal authority to unknown individuals, John Does 1-6. Although a legal entity, Cantu Apiaries used that legal entity to carry out an unlawful misappropriation of plaintiff's property, namely 432 colonies of honeybees.

38. Cantu used his business, Cantu Apiaries, along with others as yet unidentified, to engage in the above unlawful activity.

39. Cantu, through Cantu Apiaries has engaged in a pattern of activity to defraud others over a ten year period as evidenced by his prior convictions for Grand Theft, Fraud, and other larcenies.

40. More specifically, Cantu engaged in a variety of criminal actions as early as 1989 and continuing to the present as identified in pages 9-20 of Exhibit D.

41. Cantu's actions demonstrate a pattern of criminal activity making him and others liable under the RICO statute.

42. On information and belief, Cantu Apiaries is controlled, owned, and operated by Joseph Cantu.

## FIRST CAUSE OF ACTION
## BREACH OF CONTRACT

43. Rock Hill and Mattiaccio incorporates by reference the allegations in the previous paragraphs as if fully quoted herein, verbatim.

44. The Agreement is a binding contract supported by consideration.

45. Rock Hill has performed under the Agreement.

46. Per Sections of the Agreement, Cantu agreed to pay Rock Hill for the services rendered

47. The contract was not terminated by either party and was in force before, during, and after services were rendered to Cantu and Cantu Apiaries

48. Cantu and Cantu Apiaries has refused to pay for services rendered and is in material breach of the Agreement.

49. As a direct and proximate result of Cantu and Cantu's material breaches, plaintiff has suffered and will continue to suffer harm and monetary damages.

## SECOND CAUSE OF ACTION
## BREACH OF AN IMPLIED COVENANT OF GOOD FAITH

50. Rock Hill and Mattiaccio incorporates by reference the allegations in the previous paragraphs as if fully quoted herein, verbatim.

51. The Agreement is a binding contract supported by consideration.

52. Rock Hill has performed under the Agreement, and justifiably expected that Cantu Apiaries and Cantu would comply with its terms, including unnumbered Sections 2.

53. The bad faith conduct of Cantu and Cantu Apiaries in refusing to pay amounts owed under the Agreement has deprived Rock Hill of the benefits of the Agreement, in violation of the implied covenant of good faith and fair dealing. The wrongful appropriation of plaintiff's colonies has resulted in immeasurable damages.

54. As a direct and proximate result of Cantu and Cantu Apiaries material breaches, Rock Hill has suffered and will continue to suffer harm and monetary damages.

## THIRD CAUSE OF ACTION
## UNJUST ENRICHMENT

55. Rock Hill and Mattiaccio incorporates by reference the allegations in the previous paragraphs as if fully quoted herein, verbatim.

56. Rock Hill conferred a benefit upon Cantu, Cantu Apiaries, and Agriland, by making a capital investment in the development and enhancement of the honeybees to enable them to meet the stringent requirements of California Almond Growers.  Cantu, Cantu Apiaries, and Agriland are well aware of the extensive work that goes into preparing colonies of this nature for Almond pollination.

57. Cantu, Cantu Apiaries, and Agriland knew that Rock Hill conferred this benefit upon Cantu and Agriland, and accepted the capital investment, knowing that Rock Hill expected repayment of the investment.

58. Cantu, Cantu Apiaries, and Agriland has received and retained the benefit of all services rendered by Rock Hill, as well as the investment made by Rock Hill.

59. Cantu's s failure to reimburse plaintiff for the services rendered and Rock Hill's investment has resulted in an inequity to Cantu, Cantu Apiaries, and Agriland Holdings, and the unjust enrichment of the Defendants.

## FOURTH CAUSE OF ACTION
## RACKETEER INFLUENCED AND CORRUPT ORGANIZATION

60. Rock Hill and Mattiaccio incorporates by reference the allegations in the previous paragraphs as if fully quoted herein, verbatim.

61. RICO makes it unlawful "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). This prohibition necessarily requires the existence of an "enterprise." Id. To state a claim under § 1962(c), the plaintiff must allege that a "person" employed by or associated with an "enterprise": "(1) conducted (2) an enterprise (3) through a pattern (4) of racketeering activity." Lum v. Bank of Am., 361 F.3d 217, 233 (3d Cir. 2004) (citations omitted). There are two types of associations that constitute valid "enterprises" under RICO. In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 364 (3d Cir. 2010). The first type is any sort of formal legal entity, such as a corporation or partnership. Id. The second type is an "association-in-fact," which is "any union or group of individuals associated in fact although not a legal entity." Id. (quoting United States v. Turkette, 452 U.S. 576, 581–82 (1981)).

## RICO AS LEGAL ENTITY AND AS ASSOCIATION IN FACT VIOLATORS

62. Defendant violated RICO and Plaintiff was injured as a result.

63. Each Defendant is a "person" capable of holding legal or beneficial interest in property within the meaning of 18 U.S.C. § 1961 (3).

8

64. Each Defendant violated 18 U.S.C. 3 1962(c) by the acts described in the prior paragraphs, and as further described below.

65. **The Enterprise. Defendants** Cantu, and six others unidentified John Doe defendants, together with (I)Agriland Holdings, Inc, (2) one or more former officers and former directors of Cantu, (3) one or more former senior officials of Cantu Apiaries (4) employees, officers and directors of Cantu controlled companies  formed an association-in-fact for the common and continuing purpose described herein and constitute an enterprise within the meaning of 18 U.S.C. 1961(4) engaged in the conduct of their affairs through a continuing pattern of racketeering activity. The members of the enterprise functioned as a continuing unit with an ascertainable structure separate and distinct from that of the conduct of the pattern of racketeering activity. There may also be other members of the enterprise who are unknown at this time. Alternatively, the Cantu-controlled companies each constitute a separate enterprise within the meaning of 18 U.S.C. 1961(4). Alternatively, the Cantu-controlled companies together constitute an enterprise within the meaning of 18 U.S.C. 3 1961(4). Each enterprise has engaged in, and their activities have affected, foreign commerce.

66. **Pattern of Racketeering Activity.** Defendants, each of whom are persons associated with, or employed by, the enterprise, did knowingly, willfully and unlawfully conduct or participate, directly or indirectly. in the affairs of the enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. 6 I96 1 (1 ), 1961 (3, and l962(c). The racketeering activity was made possible by Defendants' regular and repeated use of the facilities and services of the enterprise. Defendants had the specific intent to engage in the substantive RICO violation alleged herein.

67. **Predicate acts of racketeering activity** are acts which are indictable under provisions of the U.S. Code enumerated in 18 U.S.C. $ 1961(I)(B), as more specifically alleged below. Defendants each committed at least two such acts or else aided and abetted such acts. The acts of racketeering were not isolated, but rather the acts of Defendants were related in that they had the same or similar purpose and result, participants, victims and method of commission. Further, the acts of racketeering by Defendants have been continuous. There was repeated conduct during a period of time beginning in approximately 1989 and continuing to the present, and there is a continued threat of repetition of such conduct. The association-in-fact enterprise

and the alternative enterprises, as alleged herein, were not limited to the predicate acts and extended beyond the racketeering activity. Rather, they existed separate and apart from the pattern of racketeering activity for the legitimate business purpose of supplying honeybees to Defendant and possibly other customers. Defendants have had and do have. upon information and belief, legitimate business plans outside of the pattern of racketeering activity. 100. Plaintiff specifically alleges that Defendants participated in the operation and management of the association-in-fact enterprise and the alternative enterprises by overseeing and coordinating the commission of multiple acts of racketeering as described below.

68. **Predicate Act:** Use of Mails and Wires to Defraud Rock Hill in Violation of 18 U.S.C. \$5 1341 and 1343. Defendants committed acts constituting indictable offenses under 18 U.S.C. \$\$ 1341 and 1343 in that they devised or intended to devise a scheme or artifice to defraud Rock Hill or to obtain money or services from Rock Hill by means of false or fraudulent pretenses, representations or promises. For the purpose of executing their scheme or artifice, Defendants caused delivery of various documents and things by the US. mails or by private or commercial interstate carriers, or received benefits therefrom. Defendants also transmitted or caused to be transmitted by means of wire communications in interstate foreign commerce various writings, signs and signals. The acts of Defendants set forth above were done with knowledge that the use of the mails or wires would follow in the ordinary course of business. or that such use could have been foreseen, even if not actually intended. These acts were done intentionally and knowingly with the specific intent to advance Defendants' scheme or artifice. Defendants carried out their scheme in different states and could not have done so unless they used the U.S. mails or private or commercial interstate carriers or interstate wires. In furtherance of their scheme alleged herein, Defendants Cantu and Cantu Apiaries communicated among themselves and with Plaintiff in furtherance of the scheme to defraud Plaintiff. These communications were typically transmitted by wire (i.e., electronically) and/or through the United States mails or private or commercial carriers.

69. In addition, in furtherance of their scheme, Defendants used wire and/or U.S. mail or private or commercial carriers to induce Plaintiff to execute the 2020 Contract.

70. Plaintiff reasonably and justifiably relied upon Defendants' false representations, false pretenses and deceptive communications, and Plaintiff has been damaged as a direct and proximate result of Defendants' participation in such enterprise, as alleged herein.

71. **Predicate Act:** Transport and Receipt of Stolen Merchandise in Violation of 18 U.S.C. 2314 and 2315. Defendants committed acts constituting indictable offenses under 18 U.S.C. S: 2314 in that having devised or intended to devise a scheme or artifice to defraud or deprive Rock Hill of its property or to obtain money or the use of its services in renting a valuable commodity, honey bees, by means of false or fraudulent pretenses, representations or promises, Defendants transported or caused to be transported in interstate or foreign commerce money having a value of $5000 or more, which was stolen, converted or taken by fraud..

72. Defendants also committed acts constituting indictable offenses under 18 U.S.C. 2315 in that they received money in excess of $5000, which crossed a State or United States boundary after being stolen, unlawfully converted or taken. The acts of Defendants set forth above were done willfully and with knowledge that the money or property was stolen, converted or taken by fraud. These acts were done intentionally and knowingly with the specific intent to advance Defendants' scheme or artifice.

73. **Predicate Act:** Travel in Furtherance of Scheme to Defraud in Violation of 18 U.S.C. 1952. Defendants committed acts constituting indictable offenses under 18 U.S.C. 1952 in that, having devised or intended to devise a scheme or artifice to defraud Rock Hill or to obtain money from Rock Hill by means of false or fraudulent pretenses, representations or promises, Defendants then traveled in foreign commerce and used facilities of foreign commerce in order to promote, manage and facilitate the continuation of their scheme. Among other things, upon information and belief, in 2021, Defendant Cantu, on behalf of himself and other Defendants, traveled to California with the intent to promote, manage and facilitate the Defendants' scheme to defraud Rock Hill by inducing another to provide property of Rock Hill to an as yet unidentified person of a value exceeding $350,000.00

74. These acts were done intentionally and knowingly with the specific intent to advance Defendants' scheme or artifice.

75. Defendants' shared objective was and is to divert funds, property and equipment.

76. Plaintiff has been damaged as a direct and proximate result of Defendants' travel in foreign commerce for purposes of promoting, managing and facilitating the continuation of their scheme.

77. **Continuity of Conduct**. Defendants' violations of state and federal law as set forth herein. each of which directly and proximately injured Plaintiff and other market participants, constituted a continuous course of conduct spanning a period from approximately 1993 to present, which was intended to obtain money through false representations, fraud, deceit, and other improper and unlawful means. Therefore, said violations were a part of a pattern of racketeering activity under 18 U.S.C. 1961(l) and (5).

78. Upon information and belief, Defendants have conducted and/or participated, directly and/or indirectly, in the conduct of the affairs of the alleged enterprises through a pattern of racketeering activity as defined herein in violation of 18 U.S.C. 1962(c).

79. The unlawful actions of Defendants, and each of them, have directly, illegally, and proximately caused and continue to cause injuries to Plaintiff in its business. Plaintiff seeks an award of damages in compensation for, among other things, the hundreds of thousands of dollars Defendants stole from Plaintiff.

80. Plaintiff accordingly seeks an award of three times the damages it sustained, and the recovery of reasonable attorneys' fees and costs of investigation and litigation, as well as any other relief as authorized by statute.


## PRAYER FOR RELIEF

WHEREFORE, Rock Hill and Mattiaccio respectfully requests that this Court:

A. Enter Judgment in favor of Rock Hill on all claims set forth above.

B. Award Rock Hill damages including, but not limited to, expectation damages and consequential damages in an amount to be determined against the Cantu, Cantu Apiaries and Agriland Holding, with pre- and post-judgment interest.

C. Award plaintiff's costs with interest

D. Plaintiff seeks punitive damages for the defendant's willful violations in an amount exceeding three million dollars.

E. Award Rock Hill such further damages and equitable relief as are just and proper.

F.  Plaintiff also asks for a writ of possession to return the 432 colonies of honeybees to him.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Rock Hill and Mattiaccio requests trial by jury in this action of all issues so triable

DATED: April 1, 2021

Respectfully Submitted,

_____

GENNARO MATTIACCIO II
45 PINTO LANE
STAFFORD, VIRGINIA 22556
(703) 595-1179

## CERTIFICATE OF SERVICE

I hereby certify, that the initial stages of this litigation, on this 1st day of April, 2021, I caused to be served on the Defendants at the below addresses:

Joseph Cantu
4584 County Road 386 N
Wewahitchka, Florida 32465

Cantu Apiaries of Florida
4584 County Road 386 N
Wewahitchka, Florida 32465

Agriland Holding Inc.
Serve James R. Maxwell, Registered Agent
23400 Road 24

13

Chowchilla, California 93610

Respectfully Submitted,

GENNARO MATTIACCIO II
45 PINTO LANE
STAFFORD, VIRGINIA 22556
(703) 595-1179