IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| GENNARO MATTIACCIO, *et al.*, | ) |
| | ) |
|     Plaintiffs, | ) |
| | ) |
| v. | ) Civil Action No. 1:21-cv-00421 (RDA) |
| | ) |
| CANTU APIARIES OF FLORIDA, LLC, | ) |
| *et al.*, | ) |
| | ) |
|     Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

This matter comes before this Court on Defendants Cantu Apiaries of Florida, LLC, Joseph Cantu, and Big River Honey, LLC's ("Defendants") Motions to Dismiss for lack of personal jurisdiction ("Motions"). Dkt. Nos. 51; 59; 65. This Court has dispensed with oral argument as it would not aid in the decisional process. Fed. R. Civ. P. 78(b); Local Civil Rule 7(J). This matter has been fully briefed and is now ripe for disposition. Considering Defendants' Motions to Dismiss (Dkt. Nos. 51; 59; 65), Plaintiff Gennaro Mattiaccio's ("Plaintiff") Opposition (Dkt. 73), and Defendants' Reply (Dkt. 74), this Court GRANTS Defendant Big River Honey, LLC's Motion to Dismiss for Lack of Specific Personal Jurisdiction (Dkt. 65) and DISMISSES the remaining motions to dismiss as MOOT for the reasons that follow.

### I. BACKGROUND

#### A. Factual Background

The facts giving rise to this cause of action stem from an apparent contract involving directly or indirectly Plaintiff Jerry Mattiaccio ("Mattiaccio"), a resident of Virginia, Rock Hill Honey Bee Farms ("Rock Hill"), a sole proprietorship organized under the laws of Virginia, Defendant Big River Honey ("BRH"), incorporated under the laws of and operating its principal

1

business in Florida, Defendant Joseph Cantu ("Cantu"), a citizen of Florida, and Defendant Cantu Apiaries of Florida ("Cantu Apiaries"), a business incorporated in Florida. Dkt. 47-2. Defendant Cantu is the sole owner of Defendant BRH. Dkt. 47-1 at 2. In his capacity as an officer of Cantu Apiaries, a business sharing the same location as and providing administrative support for Defendant BRH, Defendant Cantu approached Plaintiff Mattiaccio. Plaintiff Mattiaccio owns Plaintiff Rock Hill. Dkt. 47 at 5. The original contract shows that Defendant BRH and Plaintiff Mattiaccio entered into an agreement on November 10, 2020, for 432 beehives, which Defendant BRH sought at $100 per hive to pollinate almond orchards in February of 2021. Dkt. 47-2. Defendant Cantu contacted Plaintiff Rock Hill to inquire about Virginia beekeepers with bees to pollinate almond orchards in California. Dkt. 47 at 4.

In January of 2021, Plaintiff Mattiaccio mobilized colonies of bees for deployment to California at the request of Defendant Cantu. And on January 26, 2021, Plaintiff Rock Hill allegedly delivered 432 colonies of honeybees to Agriland Ranch ("Agriland") in Cowchilla, California, pursuant to a contract entered into between Defendant Cantu Apiaries and Agriland. *Id.* at 5. On March 5, 2021, after not having heard from Defendant Cantu about the status of their bee colonies, Plaintiff Rock Hill contacted Defendant Cantu, who then advised they would be sending the bees soon. *Id.* On March 11, 2021, Plaintiff Mattiaccio further inquired with Defendant Cantu on the status of the bees. Agriland, Defendant Cantu's almond orchard business in California, informed Plaintiff Mattiaccio that they paid Defendant Cantu several weeks prior. *Id.* Prior to the alleged theft of the bees, a third-party inspected the bees to ensure that they fulfilled all contractual requirements. *Id.* Despite Agriland's alleged representation that the bee colonies were sufficient, Defendant Cantu Apiaries indicated that the inspection of Plaintiff Rock Hill's

2

colonies showed the bees to be "substandard" and paid them a fraction of the original contract price. *Id.* at 6.

Throughout March of 2021, Plaintiff Mattiaccio and Defendant Cantu communicated about the return of Plaintiff's bees, several weeks after the initial performance of the contract. *Id*. Defendant Cantu then alerted Plaintiff Mattiaccio that on March 23, 2021, the bees would be shipped to a holding yard in Florida where they would be evaluated and then shipped back to Virginia. *Id*. On March 24, 2021, Plaintiff Mattiaccio moved to Florida to prepare for the arrival of their bees, but he did not receive any updates from Defendant Cantu. *Id.* The next day, on March 25, 2021, Defendant Cantu informed Plaintiff that payment had been sent to him in connection with the contract. He advised Plaintiff to direct any further inquiries about their bees to Sergeant Luke Keppel. Dkt. 47-5. Sgt. Keppel later informed Plaintiff that their bees sent to California had been stolen by unidentified beekeepers. *Id.* at 7. These unidentified individuals appear to be the unnamed defendants John Does 1-6 in the Amended Complaint, who Plaintiffs allege conspired with the named Defendants in this action.

The contract originally provided for the leasing of 432 hives to Defendant BRH. Dkt. 47-2. Defendant Cantu specified in their check sent to Plaintiff that the payment covered 360 hives, rather than the original 432 hives specified in the contract. Dkt. Nos. 47-2; 47-5. Defendant Cantu allegedly found half of those hives to be below grade and therefore only paid for 180 hives. Dkt. 47-4 at 2. The amount due for 180 hives would have been $18,000; however, Defendant Cantu then subtracted $8,040 for unspecified fees and $3,600 for an agreed-upon hive unload fee, leaving $6,360 to Plaintiff Mattiaccio be paid for the hives. *Id.* at 2. Plaintiff Mattiaccio alleges that they have yet to receive $350,000 worth of bees and related beekeeping equipment. Dkt. 47 at 7. Plaintiffs further allege that they should have been paid $79,920 for their pollination contract,

based on the original total sum of the hives minus Defendants' fees, and are alleging breach of contract. *Id.*

The cause of action arose on February 14, 2021, when Defendant Cantu contacted Plaintiff Mattiaccio and alleged that another beekeeper believed the bees Plaintiffs sent to Defendant Cantu belonged to them and were therefore stolen. *Id.* at 5. Plaintiff Mattiaccio then conveyed to Defendant Cantu that only law enforcement would be allowed to check the colonies in dispute. *Id.*

B.  Procedural Background

On April 5, 2021, Plaintiffs filed an initial *pro se* complaint alleging breach of contract. Dkt. 1. On November 22, 2021, Plaintiff Mattiaccio then filed a Motion for Miscellaneous Relief seeking entry of default judgment. Dkt 8. Plaintiff Mattiaccio stated that because Defendants did not respond to their Complaint filed April 5, 2021, despite several attempted phone calls to Agriland and their absence of a Special Appearance, Defendant Cantu was in default. Dkt. 8. The Court denied the motion on November 24, 2021, ruling that it was premature. Dkt. 11.

Defendants Cantu and Cantu Apiaries then filed a Response to Plaintiff's Complaint on December 6, 2021, and embedded within that Response was a Motion to Dismiss alleging that venue was improper and that they never received personal service of this lawsuit despite evidence to the contrary. Dkt. Nos. 13; 14. This Court denied Defendants' Motions to Dismiss as they did not comply with the Federal Rules of Civil Procedure, but the Court allowed Defendants to refile in accordance with the Federal Rules of Civil Procedure and Local Rules. Dkt. 17. Defendants Cantu and Cantu Apiaries refiled separate Motions to Dismiss on December 23, 2021 and on January 6, 2022, respectively. Dkt. Nos. 19-20; 30-32. Plaintiff Mattiaccio sought leave to amend the Complaint on January 18, 2022. Dkt. 40 at 3. This Court granted that motion on January 19, 2022 and denied the prior motions to dismiss as moot. Dkt. Nos. 43; 57.

Plaintiffs filed their Amended Complaint on January 27, 2022, removing Agriland as a named defendant. Dkt. 47. On February 3, 2022, Defendant Cantu Apiaries filed its Motion to Dismiss Plaintiffs' Amended Complaint. Dkt. 51. On February 8, 2022, Defendant Cantu filed a *pro se* Motion to Dismiss Plaintiffs' Amended Complaint. Dkt. 59. And on February 23, 2022, Defendant BRH filed its Motion to Dismiss Plaintiffs' Amended Complaint. Dkt. 65. Plaintiff Mattiaccio filed his Opposition to Defendants' Motions to Dismiss on March 11, 2022. Dkt. 73. Defendants filed a consolidated response to Plaintiff Mattiaccio's Opposition on March 16, 2022. Dkt. 74.

## II.  STANDARD OF REVIEW

### A.  Rule 12(b)(2) Standard

Federal Rule of Civil Procedure 12(b)(2) provides that a court may dismiss a case for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). When resolving a Rule 12(b)(2) motion, a court undertakes a two-step analysis. First, a court looks to how state law authorizes personal jurisdiction. *Perdue Foods LLC v. BRF S.A.*, 814 F.3d 185, 188 (4th Cir. 2016). Second, a court must find that the exercise of personal jurisdiction comports with the constitutional requirements of due process. *Id.* Virginia's long-arm statute extends personal jurisdiction to the constitutionally permissible limits of the Due Process Clause of the Fourteenth Amendment. *ePlus Tech., Inc. v. Aboud*, 313 F.3d 166, 176 (4th Cir. 2002). Accordingly, "[b]ecause Virginia's long-arm statute is intended to extend personal jurisdiction to the extent permissible under the due process clause, the statutory inquiry merges with the constitutional inquiry." *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 277 (4th Cir. 2009). At that point, as to each defendant, a court must find sufficient "minimum contacts [with the state] . . . such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326

U.S. 310, 316 (1945); *see also Walden v. Fiore*, 571 U.S. 277, 286 (2014) ("The requirements of *International Shoe*, however, must be met as to each defendant over whom a state court exercises jurisdiction."). That inquiry involves exploring whether general or specific personal jurisdiction exists over any nonresident defendant. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-16 (1984). "If the defendant's contacts with the [s]tate are also the basis for the suit, those contacts may establish specific jurisdiction." *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002). But "if the defendant's contacts with the [s]tate are not also the basis for suit, then jurisdiction over the defendant must arise from the defendant's general, more persistent, but unrelated contacts with the [s]tate." *Id.*

In making a personal jurisdiction determination, a district court "must accept as true the uncontroverted factual allegations in the plaintiff's complaint." *Williams v. Microbilt Corp.*, No. 3:19-cv-085 (REP), 2019 WL 7988583, at *4 (E.D. Va. Sept. 23, 2019); *Companion Prop. & Cas. Ins. Co. v. Palermo*, 723 F.3d 557, 559 (5th Cir. 2013). When a court does not conduct an evidentiary hearing on personal jurisdiction, a case may be dismissed for lack of personal jurisdiction if the plaintiff has failed to make a *prima facie* showing. *See Grayson v. Anderson*, 816 F.3d 262, 268 (4th Cir. 2016). If such a showing is made, the defendant must "present a compelling case that the presence of some other considerations would render jurisdiction [so] unreasonable," *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985), as to "offend traditional notions of fair play and substantial justice," *Int'l Shoe*, 326 U.S. at 316. In evaluating the parties' requisite burdens, a court may rely on "motion papers, supporting legal memoranda, [] the allegations in the complaint," *Consulting Eng'rs*, 561 F.3d at 276, and "the contents of affidavits and any other relevant matter submitted by the parties to assist it in determining the jurisdictional facts." 5B Alan Wright & Arthur Miller, Fed. P. & Proc. § 1351, at 305 (3d ed.

2004); *see also Farrar v. McFarlane Aviation, Inc.*, 823 F. App'x 161, 162-63 (4th Cir. 2020) (describing the method by which courts assess a personal jurisdiction question including the universe of documents to which courts may refer).

### III. ANALYSIS

The Court assesses the personal jurisdiction issue and holds that exercising specific jurisdiction over each of the defendants is improper. Because Virginia's long-arm statute extends its authorization of personal jurisdiction to the limits of due process, this Court focuses solely on the constitutional inquiry. *See English & Smith v. Metzger*, 901 F.2d 36, 38 (4th Cir. 1990) (interpreting Virginia's long-arm statute as being coextensive with the Due Process Clause).

Plaintiffs argue this Court has specific personal jurisdiction over Defendants because the cause of action arises from a contract entered into by Plaintiff Mattiaccio at his residence in Virginia. Dkt. 47 at 3. Conversely, Defendants argue that Plaintiffs have not sufficiently alleged specific jurisdiction over Defendant Cantu because they have not pled facts that show minimum contacts. Dkt. 65 at 3-4.[1] Defendants also contend that exercising specific jurisdiction over them would not comport with the Due Process Clause of the Fourteenth Amendment because they have not purposefully availed themselves of the privilege of conducting activities within Virginia; that the cause of action arose outside the forum; and that exercising personal jurisdiction over Defendants would be unreasonable.

---

[1] The jurisdictional arguments advanced in the most recent motion to dismiss echo the arguments raised in the other two motions to dismiss. Moreover, all defendants are represented by the same counsel and, in filing their reply, they joined together rather than filing separate briefs. Dkt. 74. Counsel entered a notice of appearance on behalf of Defendant Cantu Apiaries on December 30, 2021, Dkt. 22, and then entered a second notice of appearance on behalf of the remaining Defendants Cantu and BRH on February 11, 2022. Dkt. 64. For these reasons, this Court considers the first two motions to dismiss as duplicative of the most recent motion and will therefore rely on the most recent filing in assessing the arguments raised by Defendants.

Courts typically find that sufficient minimum contacts exist with the forum state if a federal court may exercise general or specific personal jurisdiction over the nonresident defendants. *Helicopteros*, 466 U.S. at 414-16. Here, Plaintiffs assert that this Court has specific jurisdiction over Defendants. Within the Fourth Circuit, courts apply a three-pronged test to evaluate whether specific personal jurisdiction is proper: (1) "did the defendants 'purposefully avail' themselves of the privileges of conducting activities in the forum"; (2) "does the claim arise out of these activities"; and (3) "is the exercise of jurisdiction reasonable?" *Perdue Foods LLC*, 814 F.3d at 188; *Aitken v. Comms. Workers of Am.*, 496 F. Supp. 2d 653, 659 (E.D. Va. 2007) (citing *Christian Sci. Bd. of Directors of First Church of Christ, Scientist v. Nolan*, 259 F.3d 209, 216 (4th Cir. 2001)); *see also Verizon Online Servs., Inc. v. Ralsky*, 203 F. Supp. 2d 601, 611 (E.D. Va. 2002).

### A. Personal Jurisdiction Over Named Defendants

#### i. Purposeful Availment of the Laws of Virginia

To exercise jurisdiction consistent with due process, a defendant must have established minimum contacts with the forum state itself. *Burger King*, 471 U.S. at 275. The inquiry focuses on "the relationship among the defendant, the forum and the litigation." *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984); *Walden*, 571 U.S. at 284. Those contacts must also show a relationship such that the "defendant's conduct connects [it] to the forum in a meaningful way" rather than be "random, fortuitous, or attenuated." *Walden*, 571 U.S. at 285, 290. "The Plaintiff cannot be the only link to the [d]efendant." *Id.*

Factors relevant to the minimum contacts analysis include: (1) "whether the defendant maintains offices or agents in the forum state;" (2) "whether the defendant owns property in the forum state;" (3) "whether the defendant reached into the forum state to solicit or initiate business;" (4) "whether the defendant deliberately engaged in significant or long-term business activities in

the forum state;" (5) "whether the parties contractually agreed that the law of the forum state would govern disputes;" (6) "whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship;" (7) "the nature, quality and extent of the parties' communications about the business being transacted;" and (8) "whether the performance of contractual duties was to occur within the forum." *Liberty Mut. Fire Ins. Co. v. Menozzi Luigi & C. S.p.A.*, 92 F. Supp. 3d 435, 441 (E.D. Va. 2015). In a breach of contract case, where a breach did not occur in the forum state, and no other facts weigh in favor of finding minimum contacts, the defendant does not purposely avail itself of the forum state. *Clarke Veneers & Plywood*, *Inc. v. Mentakab Veneer & Plywood, SDN BHD*, 821 F. App'x 243, 244 (4th Cir. 2020).

While a single contract may be enough to satisfy the minimum contacts test showing that defendants purposefully availed themselves of the forum state, the contract must show a continuous, ongoing contractual relationship that satisfies the factors weighing in favor of minimum contacts. *Burger King*, 471 U.S. at 469. In *Burger King*, the parties contracted for a franchise relationship. The relationship involved continuous contractual obligations with defendants' constant presence in the forum state, utilized the state's businesses, buildings and roads, and relied on the forum state's choice of law. *Id.* These wide-reaching provisions satisfied the minimum contact requirements of due process. *Id.* at 471. But the same cannot be said here.

Plaintiffs argue that Defendants purposefully availed themselves of the laws of Virginia because Plaintiff Mattiaccio executed the contract at his residence in Virginia. Dkt. 47 ¶ 10; 12. Specifically, Plaintiff argues that "on numerous occasions in 2020," Defendant Cantu contacted Plaintiff and maintained close contact with the bees negotiated in the contract for delivery to California. *Id.* ¶ 10. Moreover, Plaintiff Mattiaccio maintains that Defendants reached out to other Virginia commercial beekeepers over the internet to "reap the economic benefits within the

9

forum." Dkt. 73 at 2-3.  From Plaintiff's point of view, specific personal jurisdiction derives from Defendants' outreach to Plaintiffs and other Virginia beekeepers to avail themselves of the forum state, and the creation of a contract over the phone sent to Plaintiff's residence.  *Id.*

Defendant Cantu counters that he is not a named party to the original contract and does not transact business in Virginia.  Therefore, he argues, there is no specific personal jurisdiction over him.  On that basis, Defendant Cantu submits that he does not buy or sell products in Virginia, does not maintain an office or own property in Virginia, and has no agents or employees operating in Virginia.  Dkt. 65 at 3.  Furthermore, Defendant Cantu emphasizes that the events that led to the apparent breach occurred in California, where the bees were stolen, and that Plaintiffs admit that Defendant Cantu was notified of the stolen bees while he was in Florida.  *Id.*

These arguments also apply to Defendants Cantu Apiaries and BRH.  They have no contacts with the forum because their alleged contacts to Virginia arise from the contract negotiated by Defendant Cantu.  *See* Dkt. 47 ¶ 12.  Plaintiffs' Amended Complaint avers that Defendant Cantu Apiaries was named on the negotiated contract and that Defendant BRH contracted directly with Defendant Cantu's almond orchard farm, Agriland.  Dkt. 47 ¶¶ 12, 14, 24, 25, 44.  Their contacts rely on the ink of the original contract.  But, as Defendants argue, that original contract does not by itself establish minimum contacts.  At no point does the Amended Complaint allege that the parties negotiated or performed the contract *in* the forum.

This Court employs a "facts and circumstances" rather than a "talismanic or mechanical" test in assessing Defendants' minimum contacts.  *Chung v. Nana Dev. Corp.*, 783 F.2d 1124, 1129 (4th Cir. 1986).  The contacts Defendants made in Virginia do not rise to the required level in *Walden* and appear random or fortuitous.  The Supreme Court unequivocally has stated that "the Plaintiff cannot be the only link to the Defendant."  *Walden*, 571 U.S. at 285, 290.  Taking

Plaintiffs' factual allegations as true in the Amended Complaint, Defendants maintain no other connections to the forum state besides dealings with Plaintiffs over the phone and sending a check to Plaintiff Mattiaccio's residence in Virginia. *See* Dkt. 47 ¶ 14. Furthermore, while Plaintiff alleges that Defendant Cantu contacted other Virginia beekeepers, those beekeepers are not the subject of this action. *Id*. And as companies operating principally from Florida and where the cause of action occurred entirely outside the forum, Defendants Cantu Apiaries and BRH also do not have the necessary minimum contacts in Virginia.

Considering the facts and circumstances of this case, the minimum contacts factors contemplated by the Fourth Circuit do not weigh in favor of finding that Defendant Cantu or his businesses purposefully availed themselves of the forum state. Plaintiffs do not allege that Defendant Cantu maintains or holds offices or property in Virginia. Nor do Plaintiffs allege that Defendant Cantu wanted significant or long-term business, but rather sought business for a specified period for a specific contract. *Id.* The Amended Complaint and contract are both silent as to which state law would govern this contract. The communications were brief and related specifically to the services provided for this one-time contract, without mention of continuing duties beyond the transfer of bees to California, the pollination of Defendant Cantu's almond orchard in California, and the return of the bees to Virginia. *Id.* Finally, the performance of the contractual duties mainly occurred in California as the bees were shipped to California, graded, assessed, pollinated, and subsequently stolen in California, all outside of Virginia. *Id.* ¶¶ 24-33. Based on these factors, the only ties to Virginia that Plaintiffs allege are the solicitation to three beekeepers, including Plaintiff Mattiaccio. Furthermore, the main events that gave rise to this breach of contract cause of action occurred in California.

Indeed, the Supreme Court held in *Burger King* that a single contract may establish the

necessary minimum contacts for a defendant to be hauled into court. *Burger King Corp.*, 471 U.S. at 469. However, the contract in *Burger King* was a franchiser/franchisee relationship involving ongoing contractual duties that were continuous and required a significant presence within the forum state to continue to contract with other local businesses, to maintain offices, and the forum state's choice of law. *Id.* at 469-71. In this case, there are no allegations in the Amended Complaint that rise to this level of continuous contact with Virginia's state resources and businesses. Therefore, the allegations in this case do not rise to the exacting jurisdictional standard enunciated in *Burger King*.

The simple execution of a contract in Virginia does not give rise to personal jurisdiction. *See Ellicott Mach. Corp. v. John Holland Party Ltd.*, 995 F.2d 474, 478 (4th Cir. 1993); *Orion Cap., LLC v. Promier Prods., Inc.*, No. 4:21-CV-00015, 2021 WL 4943501, at *5 (W.D. Va. Oct. 22, 2021) (citing *Szulik v. TAG Virgin Islands, Inc.*, 783 F. Supp. 2d 792, 795 (E.D.N.C. 2011)). Sufficient contacts exist where the cause of action arises in the forum, including both execution and performance of the contract. *English & Smith*, 901 F.2d at 39-40; *Du-Al Corp. v. Rudolph Beaver, Inc.*, 540 F.2d 1230, 1233 (4th Cir. 1976). In *Ellicott*, the Fourth Circuit distinguished executing a contract from performing the contract in the forum. 995 F.2d at 478. Without having performed the contract in the forum or at least having established a "longstanding business relationship" with a party in the forum, the Court declined to extend personal jurisdiction over the defendant. *Id.* That lens prevents this Court from extending personal jurisdiction over Defendants in this case. Defendants "ha[ve] no other interest in Virginia" other than Defendant Cantu's phone call to Plaintiff Mattiaccio inquiring about leasing Plaintiff Rock Hill's beehives. *Id.*; *see also Consulting Eng'rs*, 561 F.3d at 280 (declining personal jurisdiction over defendant in Virginia where defendant was alleged to have reached out to the forum because such communications were

"too attenuated"). To be sure, (1) the breach of the contract occurred outside of Virginia; (2) the activities contemplated by the contract in order to perform arose outside the forum, and (3) the defendant held no offices in Virginia, never travelled to Virginia, nor held any property in Virginia. *See* Dkt. Nos. 47; 65 at 3-4, 51 at 2-3, 57 at 2-3. Lastly, Plaintiffs do not allege that the contractual relationship with Defendant BRH "envisioned continuing and wide-reaching contacts" in Virginia. *Burger King*, 471 U.S. at 480.

The only other possible contacts Defendant Cantu may have established as alleged by Plaintiff Mattiaccio is the solicitation of two other beekeepers. However, this solicitation alone does not rise to the level of a "substantial relationship" between Defendants and the forum state, nor does it conclusively show that Defendants purposefully availed themselves to the laws of the forum. *See Walden,* 571 U.S. at 284-85 (holding that minimum contacts analysis "looks to the defendant's contacts with the forum [s]tate itself, not the defendant's contacts with persons who reside there").

Based on this analysis, Plaintiffs have not made a *prima facie* showing that Defendant Cantu or his businesses purposely availed themselves of Virginia law.

### ii. Cause of Action's Relationship to Defendants' Activities in Virginia

A nonresident defendant's relationship to the forum "must [also] arise out of contacts that 'the defendant himself' creates with the forum." *Walden*, 571 U.S. at 284 (quoting *Burger King*, 471 U.S. at 475). If these minimum contacts "are related to the operative facts of the controversy, then an action will be deemed to have arisen from those contacts." *Verizon*, 203 F. Supp. 2d at 620 (quoting *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1267 (6th Cir. 1996)).

In sum, Plaintiffs have not alleged facts sufficient to make a *prima facie* case of specific personal jurisdiction over Defendant Cantu or his businesses as the encounters Defendant Cantu

has allegedly made with the forum do not constitute sufficient minimum contacts. Any action arising out of these contacts does not give rise to a cause of action in the forum. Furthermore, Defendants Cantu Apiaries and BRH's ties to Virginia solely arise from the contract entered into between Defendant BRH and Plaintiff Mattiaccio. Dkt. 47 ¶¶ 12, 14, 25, 44.

This is not to say that Plaintiffs are without redress, as they are able to sue in a state in which Defendants have established the required minimum contacts and from where the operative facts arise from those contacts.

### iii. *Reasonableness of Exercising Personal Jurisdiction Over Defendants*

The third prong of the due process analysis requires courts to evaluate whether a defendant's actions have a "substantial enough connection" with the plaintiff and the forum "to make the exercise of personal jurisdiction over [the defendants] constitutionally reasonable." *Verizon*, 203 F. Supp. 2d at 621 (citing *Christian Sci.*, 259 F.3d at 216). In ascertaining whether the exercise of personal jurisdiction over a foreign defendant is constitutionally reasonable, courts in the Fourth Circuit consider five factors: "the burden on the defendant, the forum [s]tate's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of several [s]tates in furthering fundamental substantive social policies." *Christian Sci.*, 259 F.3d at 217 (quoting *Burger King*, 471 U.S. at 477). Ultimately, the reasonableness inquiry focuses on whether exercising jurisdiction over a defendant "make[s] litigation 'so gravely difficult and inconvenient' that a party unfairly is at a 'severe disadvantage' in comparison to his opponent." *Id.* (quoting *Burger King*, 471 U.S. at 478).

As previously stated, Plaintiffs have not alleged facts sufficient to show that Defendants have a "substantial enough connection" with the forum. *See* Dkt. Nos. 47; 51; 67. This conclusion

is further justified by applying the Fourth Circuit's five-factor test.

In this case, Defendants' burdens in travel and litigation costs weigh against a constitutionally reasonable exercise of due process, especially where Defendant Cantu could not reasonably foresee litigation arising in Virginia. *See CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285, 296 (4th Cir. 2009) (holding that the reasonable foreseeability of litigation in the forum state weighed in favor of constitutional reasonableness).

The second factor weighs against constitutional reasonableness. While Virginia maintains a substantial interest in adjudicating local business disputes, a cause of action outside the forum involving one contract between a Virginia resident and entirely foreign defendants does not indicate a strong state interest. Had this been a case involving repeat customers or business entities negotiating contracts with other Virginian beekeepers, the state interest would be more substantial. *See Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 561 (4th Cir. 2014) (finding constitutional reasonableness in light of "vigorous business solicitations" undertaken by defendant "which gave rise to a two-year relationship between the parties that spanned a series of transactions and resulted in the sale of millions of dollars in goods"); *see also Ellicott*, 995 F.2d at 478 (declining personal jurisdiction where defendant's contacts in the forum appeared to be "its sole venture into that state" and did not result from a "longstanding business relationship" with a party in that state).

As to the third and fourth factors, Plaintiffs do have a major interest in obtaining an efficient resolution to their alleged breach of contract case. However, a jurisdiction where any of the underlying facts of the cause of action arose, *i.e.* the shipping, delivery, pollination, and ultimate theft of the bees, Dkt. 47 at 2, provides a far more efficient means of adjudicating Plaintiffs' alleged claim.

Lastly, the furthering of fundamental social policies is achieved by avoiding violating a defendant's due process rights by haling them into an unreasonable and inconvenient forum.

Because each of the five factors ultimately weigh prominently against a finding of constitutional reasonableness, it is likely that litigation in the forum state of Virginia would lead to great disadvantages on the part of Defendants in comparison to Plaintiffs—especially given the existence of multiple other fora directly related to the cause of action.

### B.  Personal Jurisdiction Over Unnamed Defendants

Plaintiffs aver that six additional "John Doe" defendants were involved in the alleged wrongful conversion of their property and equipment. Dkt. 47 at 2. Despite the passing of over 13 months since the filing of the original complaint, and with discovery coming to a close in just under a month, Plaintiffs continue to allege that the identities of these unnamed defendants remain unknown. *Id.* Federal Rule of Civil Procedure 4(m) requires the dismissal of a defendant if that party has not been served within 90 days of the complaint. Fed. R. Civ. P. 4(m) ("If a defendant is not served within 90 days after the complaint is filed, the court . . . must dismiss the action without prejudice against that defendant[.]"); *see also Koehler v. Dodwell*, 152 F.3d 304, 306 (4th Cir. 1998) ("Absent waiver or consent, a failure to obtain proper service on the defendant deprives the court of personal jurisdiction over the defendant."). Such dismissal would be without prejudice. *Attkisson v. Holder*, 925 F.3d 606, 628 (4th Cir. 2019). Here, Plaintiffs have not properly served any of the John Doe defendants within 90 days of filing their Amended Complaint. And "given the paucity of the allegations and the record," this Court "does not have sufficient factual basis to assert personal jurisdiction over them." *Graduate Mgmt. Admission Council v. Lei Shi*, No. 1:07-cv-605, 2008 WL 112047, at *1 (E.D. Va. Jan. 7, 2008). As such, each unnamed defendant will be dismissed from this action without prejudice as well.

## IV. CONCLUSION

For the reasons articulated in this opinion, it is hereby ORDERED that Defendants' Motions to Dismiss for Lack of Jurisdiction (Dkt. Nos. 51; 59; 65) are GRANTED; and it is

FURTHER ORDERED that the Amended Complaint (Dkt. 47) is DISMISSED WITH PREJUDICE.

The Clerk is directed to forward copies of this Order to counsel of record and to close this civil action.

To appeal this decision, Plaintiff must file a written notice of appeal with the Clerk of Court within 30 days of the date of entry of this Memorandum Opinion and Order. A notice of appeal is a short statement indicating a desire to appeal, including the date of the order Plaintiff wants to appeal. Plaintiff need not explain the grounds for appeal until so directed by the court of appeals. Failure to file a timely notice of appeal waives Plaintiff's right to appeal this decision.

It is SO ORDERED.

Alexandria, Virginia
May 19, 2022

/s/
Rossie D. Alston, Jr.
United States District Judge